**ASHLEY D. ADAMS, PLC**
**Ashley D. Adams, 013732**
4301 N. 75th Street
Suite 105
Scottsdale AZ 85251
Phone:          (480) 219-1366
Facsimile:     (480) 219-1451
aadams@azwhitecollarcrime.com
Attorney for Defendant Sherry Ann Pierce

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Gary Leonard Pierce, George Harry Johnson, James Franklin Norton and Sherry Ann Pierce,<br><br>Defendants. | No.  CR17-713-PHX-JTT<br><br>**DEFENDANT SHERRY PIERCE'S MOTION TO STRIKE THE TESTIMONY OF THOMAS BRODERICK**<br><br>**(Defendant Out of Custody)**<br><br>**(Oral Argument Requested** |

Defendant Sherry Pierce, by and through undersigned counsel, hereby files her Motion to Strike the anticipated testimony of the government's proposed expert, Thomas M. Broderick.  Ms. Pierce's Motion is supported by the attached Memorandum of Points and Authorities.

ASHLEY D. ADAMS, PLC
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      FACTS**

   **A.      The Indictment**

On or about May 23, 2017, the Grand Jury issued an Indictment charging Defendants with one count of Conspiracy in violation of 18 U.S.C. § 371, two counts of Federal Programs Bribery in violation of 18 U.S.C. § 666(a)(1)(B), one count of Honest Services Mail Fraud in violation of 18 U.S.C. § 1341 and 1346, and five counts of Honest Services Wire Fraud in violation of 18 U.S.C. § 1343 and 1346.  In essence, the government alleges that former Arizona Corporation Commissioner Gary Pierce was bribed indirectly by Defendant George Johnson in exchange for Mr. Pierce's favorable votes related Johnson Utilities' pending rate case, and a proposed policy to treat income tax as a cost for pass-through entities.  The form of the bribe, the Indictment alleges, was $31,500 in wages paid to  Gary Pierce's wife, Sherry Pierce, while she was working for KNB Consulting (hereinafter "KNB.")  KNB is K.N's company.  K.N. is Defendant Jim Norton's ex-wife. Defendants vehemently dispute these allegations. [1]

---

[1]  Ms. Pierce intends to demonstrate at trial that she performed *bona fide* services for the salary she was paid, was qualified for the position, and indeed has vast experience in election and voting issues. The evidence will further show that Gary Pierce had been interested in and a proponent of, the income tax pass through issue, long before the matter came to a vote at the ACC. Mr. Pierce, a lifelong public servant, did not engage in any of the improper conduct with which he is charged.  The government's entire case rests on the testimony of K.N., who publicly vowed to get revenge on her husband.

ASHLEY D. ADAMS, PLC
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

B.     **"The Opinion of Thomas M. Broderick."**

On or about February 12, 2018, the government disclosed the "Opinion of Thomas M. Broderick" (hereinafter "Opinion"), which is attached hereto as Exhibit 1.[2] Mr. Broderick's CV is attached as Exhibit 2. Most of Mr. Broderick's Opinion consists of a resuscitation of various documents, transcripts, and recordings related to matters before the Arizona Corporation Commission (hereinafter "ACC"). All of the documents summarized by Mr. Broderick are public records, although many have not yet been produced by the government. Interwoven throughout the Opinion are some of Mr. Broderick's personal observations about Mr. Pierce's conduct.

The Contract between Mr. Broderick and the U.S. Attorney's Office defined Mr. Broderick's "Statement of Work" as follows:

> "…to analyze ACC records pertaining to Johnson Utilities from the inception of the company and its regulation by the ACC until Commissioner Gary Pierce was no longer a member of the ACC as of January 2015. **The work will include an analysis of actions taken by the ACC during the conspiracy period as it related to the relevant facts of the criminal case and defendants. He will provide expert input to assist the trial team in preparing for the trial regarding the operations and procedures of the ACC**…" (Emphasis added.)

(Opinion, Exhibit 1, pp. 13-14.)

While it is difficult to discern the precise nature of Mr. Broderick's "expert" analysis, Mr. Broderick also examined, "relevant comparisons of actions taken or not by Gary Pierce in the pre-conspiracy period and during the conspiracy period." *Id*. Mr. Broderick appears to

---

[2] Mr. Broderick was the Director of the Utilities Division of the ACC from July 2015- December of 2016. He was not employed by the ACC during the period of the Indictment, and has no personal knowledge of the events contained in his Opinion, other than that gleaned from his review of the public records referenced therein.

1  conclude that, "Gary Pierce's discretionary supportive actions in these two dockets far

2  exceeded those of any other commissioner" in the subject Johnson Utilities cases.

3  　As set forth below, the Opinion does not meet the admissibility standards set forth in

4  Rule 702 of the Federal Rules of Evidence, or the factors set forth in *Daubert v. Merrell Dow*

5  *Pharms, Inc.* 509 U.S. 579, 587-92 (1999), and *Kumho Tire v. Carmichael*, 526 U.S. 137

6  (1999).   For these reasons, Mr. Broderick should not be permitted to testify as an expert

7  witness.

8  **II.        The Daubert/Kumho and Rule 702 tests for admissibility of expert testimony.**

9  　Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is only

10  admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill,

11  experience, training, or education; (2) the scientific, technical, or other specialized knowledge

12  will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the

13  testimony is based on sufficient facts or data; (4) the testimony is the product of reliable

14  principles and methods; and (5) the expert has reliably applied the relevant principles and

15  methods to the facts of the case.  Fed.R.Evid. 702.

16  　 In *Daubert,* the Supreme Court abandoned the "general acceptance" test as the sole

17  determinant in the admission of scientific expert testimony in favor of a broader examination

18  which included such factors as: (1) whether the scientific theory or technique can be (and has

19  been) tested; (2) whether the theory or technique has been subjected to peer review and

20  publication; (3) whether a particular technique has a known potential rate of error; and (4)

21  whether the theory or technique is generally accepted in the relevant scientific

22  community.  509 U.S. at 593-594.  Thereafter, the Supreme Court expanded the scope of the

*Daubert* test to all expert testimony, whether scientific or non-scientific, in *Kumho Tire v.*

ASHLEY D. ADAMS, PLC
4301 N. 75ᵗʰ Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

**ASHLEY D. ADAMS, PLC**
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

1 *Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999).  These cases instill in the trial court the

2 obligation to serve as a "gatekeeper," and to ensure that any and all expert testimony "is not

3 only relevant, but reliable."  *Daubert*, 509 U.S. 579.

4        Expert testimony must not, "usurp[s] either the role of the trial judge in instructing the

5 jury as to the applicable law, or the role of the jury in applying that law to the facts before

6 it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991).  Such testimony must also

7 "aid the jury in making a decision…" and not tell the jury what result to reach, thereby

8 substituting "the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101

9 (2d Cir.1994); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir.

10 2008)(Expert's testimony as to how Uniform Commercial Code (UCC) applied to facts of

11 case and his explanation that conduct of payment service violated UCC was not admissible);

12 *City of Phoenix v. First State Ins. Co.*, 2016 WL 4592906 (D. Ariz. Sept. 2, 2016)(Professor's

13 report offered in insurance coverage dispute excluded on the basis that report invaded the

14 province of the court by expounding on law and invaded the province of the jury by resolving

15 facts.)

16 **III.    Broderick's Opinion and Proposed Testimony Should Be Stricken**

17        **A.    The Portion of Broderick's Opinion which simply summarizes
               filings does not require expertise, nor does it assist the jury.**

18

19 Expert opinion must have "substance such that it would be helpful to the jury." *Alaska

20 Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 882 (9th Cir. 2013), *opinion

21 amended and superseded on other grounds*, 738 F. 3d 960 (9th Cir. 2013). In other words, it

22 should "address an issue beyond the common knowledge of the average layman." *Mukhtar v.

Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n. 9 (9th Cir. 2002), *overruled on other*

ASHLEY D. ADAMS, PLC
4301 N. 75ᵗʰ Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

1  *grounds* by *Estate of Barabin v. AstenJohnson, Inc.,* 10-36142, 2014 WL 129884 (9th Cir.

2  Jan. 15, 2014).

3       Mr. Broderick's summary of the various ACC filings, as they appear in his report, do

4  not require any expertise.  These documents could be summarized by a case agent at trial, or

5  any witness for that matter. The filings at issue are public records, admissible pursuant to

6  F.R.E. 803(8), and thus no foundation need be laid.  Mr. Broderick's regurgitation of their

7  contents does not assist the jury in any way, as the documents speak for themselves.  *See In*

8  *Re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 962 (D. Ariz. 2007) ("[T]he fact finder

9  is ... fully capable of understanding the evidence and deciding the issues through the use of

10 its common knowledge and common sense.")

11       **B.      Broderick's Opinion does not offer expert testimony.**

12       Broderick's Opinion does not indicate exactly *what* information Mr. Broderick is

13 providing that will help the trier of fact to understand the evidence or to determine a fact in

14 issue. *See Fed.R.Evid*. 702(2).  Mr Broderick has provided a historical account of the Johnson

15 rate case, and the income tax pass-through issue, facts which can be gleaned from the

16 documents themselves.

17       Mr. Broderick's *personal* opinions about Mr. Pierce's actions are not relevant, nor are

18 they based on any scientific, technical, or other specialized knowledge, which has been peer

19 reviewed and tested.  *See Daubert,* 509 U.S. at 593-594.  Mr. Broderick's former position as

20 (a short term) Utilities Director does not make him more qualified to opine about Mr. Pierce's

21 conduct than the fact witnesses who were actually present for the Johnson matters. The best

22 witnesses to testify about the dynamics surrounding the Johnson rate case, and the income tax

   pass-through, are the Commissioners who were actually there.  Why does the government

**ASHLEY D. ADAMS, PLC**
4301 N. 75ᵗʰ Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

need Mr. Broderick, to testify about the income tax pass through issues, for example, when it could call Susan Bitter Smith, Bob Stump, and Brenda Burns, and Bob Burns, the Commissioners at the time, who voted 4-1 **in favor of** the income tax pass through? [3] Surely, these Commissioners can testify about whether they were unduly influenced by Mr. Pierce, as Mr. Broderick seems to suggest. The Commissioners are in a far better position than Mr. Broderick to describe the political landscape in which these measures were passed.

Further, Mr. Broderick has no personal knowledge regarding the state of mind of any of the Commissioners who voted on the various agenda items. He was not present when the Commissioners discussed these issues with their policy advisers, or perhaps amongst themselves, prior to the votes.[4] There are many factors which might affect the way a Commissioner votes, including his or her political affiliation, personal biases and beliefs. Mr. Broderick cannot opine as to *why* the Commissioners voted the way that they did-only the Commissioners know the rationale behind their votes.

The ACC is made up of elected officials, and its composition changes every two years, as terms expire. Commissioners have their own way of doing things, and their individual

---

[3] The Johnson rate case was decided in 2012. The Commissioners at that time were Gary Pierce, Paul Newman, Sandra Kennedy, Brenda Burns, and Bob Stump. Mr. Pierce was Chairman during that 2011 and 2012 time period. The Commission voted on the pass through issue in February of 2013. The vote followed the 2012 election, where Kennedy and Newman, both Democrats, lost to Bob Burns and Susan Bitter-Smith. As the composition of the Commission changes, so does the ability to advance policy changes, as was the case for the income tax pass through, which Mr. LeSueur will testify was of interest to Mr. Pierce long before 2012.

[4] For example, Mr. Broderick was not privy to the behind the scenes research on the income tax pass through issue conducted by John LeSueur, Mr. Pierce's policy advisor.

ASHLEY D. ADAMS, PLC
4301 N. 75ᵗʰ Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

1   personalities.  Each is serving his or her constituents, and pursuing those policies and agendas

2   which are consistent with the stated mission.  Mr. Broderick's observation about what Mr.

3   Pierce did, as compared to the other Commissioners, is not only irrelevant, it is not significant

4   in this context.  Mr. Pierce was the Chairman of the Commission during 2011-2012, and thus

5   it is only natural that he would push through policy objectives which were important to him,

6   such as the income tax pass-through.  Regardless, Mr. Broderick's conclusions about Mr.

7   Pierce's conduct are pure speculation.

8         In sum, Mr. Broderick's Opinion does not offer any additional insight that will aid the

9   jury in any way.  If anything, his personal observations will only serve to confuse and mislead

10   the jury, and should be stricken.  *See United States v. Rincon,* 28 F.3d 921, 926 (9th Cir.1994)

11   (To fulfill its gate-keeping role, the court must "strike the appropriate balance between

12   admitting  reliable,  helpful  expert  testimony  and  excluding  misleading  or  confusing

13   testimony.")

14   **C.**     **Mr. Broderick's Opinion invades the province of the jury.**

15         Although Mr. Broderick's Opinion is not entirely clear, he appears to opine that Mr.

16   Pierce did something improper.  The evaluation of the propriety of Mr. Pierce's conduct rests

17   solely in the hands of the jury.  *See Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190,

18   1198 (C.D. Cal. 2015) (excluding expert testimony that "the use of force was 'excessive' or

19   'unreasonable,' under the circumstances," but allowing expert's opinions to "be explored

20   through hypothetical questioning so as to avoid invading the province of the jury").  Mr.

21   Broderick's Opinion does not aid the jury in its decision, but instead appears to advise the

22   jury what result it should reach.  As the Honorable Neil Wake observed recently in *City of*

ASHLEY D. ADAMS, PLC
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

1  *Phoenix v. First State Ins. Co.*, 2016 WL 4592906, after examining the admissibility of the

2  expert opinion of law professor who had published books and articles on insurance law:

> None of this is legitimate expert testimony. Federal Rule of Evidence 702 permits an expert to testify only if the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." An expert "cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury on the applicable law is the exclusive province of the court." (Citations omitted.) …As illustrated above, much of Stempel's report invades the province of the court by expounding law or invades the province of the jury by resolving facts. ….Stempel does not just "refer" to legal provisions; he spends pages detailing insurance law, complete with case citations. He offers to testify that The Hartford breached the terms of its policies, acted in bad faith, and deserves punitive damages. None of that is admissible on this record; indeed, it is all incorrect….

Like Professor Stempel, Mr. Broderick's personal opinion about why Mr. Pierce did

what he did is not relevant, and invades the province of the jury.

## III.    CONCLUSION.

For the reasons set forth above, Ms. Pierce respectfully requests that this Court strike

the testimony of Mr. Broderick and not allow him to testify as an expert at trial.

RESPECTFULLY SUBMITTED this 22th day of February, 2018.

**ASHLEY D. ADAMS, PLC**


By: *s/Ashley D. Adams*
    Ashley D. Adams
    Attorney for Defendant Sherry Ann Pierce

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 22th day of February, I electronically transmitted foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ ECF registrants:

THE HONORABLE JOHN J. TUCHI
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street
Phoenix, AZ 85003-2156
Phone: (602) 322-7510
tuchi_chambers@usd.uscourts.gov


Fred Battista
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 North Central Avenue, Ste 1200
Phoenix, Arizona 85004
Fred.Battista@usdoj.gov

Frank Galiti
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 North Central Avenue, Ste 1200
Phoenix, Arizona 85004
Frank.Galati@usdoj.gov

Pat Gitre
Patricia A. Gitre PLC
801 N. 1ST Avenue
Phoenix, Arizona  85003
602-320-0314
patgitre@patriciagitre.com


Ivan K. Mathew
Mathew & Associates
6245 N. 24th Parkway, Suite 207
Phoenix, Arizona 85016
602-254-8088
ikmathew@mathewlaw.com

ASHLEY D. ADAMS, PLC
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

10

Woodrow Thompson
Hannah Porter
Gallagher & Kennedy
2575 E. Camelback Road, Suite 1100
Phoenix, AZ 85016-9225
Hannah.porter@gknet.com
woody.thompson@gknet.com

_s/ Mali Evans_
Mali Evans
Legal Assistant to Ashley D. Adams

**ASHLEY D. ADAMS, PLC**
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366