**ASHLEY D. ADAMS, PLC**
**Ashley D. Adams, 013732**
4301 N. 75th Street
Suite 105
Scottsdale AZ 85251
Phone:      (480) 219-1366
Facsimile:  (480) 219-1451
aadams@azwhitecollarcrime.com
Attorney for Defendant Sherry Ann Pierce

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR17-713-PHX-JTT |
| Plaintiff, | |
| v. | **DEFENDANT SHERRY PIERCE'S TRIAL MEMORANDUM** |
| Gary Leonard Pierce, George Harry Johnson, James Franklin Norton and Sherry Ann Pierce, | |
| Defendants. | |

Defendant Sherry Pierce, by and through undersigned counsel, hereby files her Trial Memorandum in anticipation of various evidentiary issues which may arise during trial.

**I.   E-mail Evidence.**

As part of its defense, Defendant Sherry Pierce intends to present numerous e-mail messages between Mrs. Pierce, K. Norton and others. As explained below, this material is not hearsay and is admissible into evidence. As a threshold matter, the Court should find that these emails satisfy the authentication requirements of Rule 901.

Rule 901 states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(a) simply requires, therefore, that a proponent of evidence make a *prima facie* showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is."  This requirement "does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Dhinsa,* 243 F.3d 635, 658-59 (2d Cir. 2001) (citations omitted).

Once this threshold showing has been made, any questions concerning the genuineness of the item normally go to the *weight* of the evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 n.6 (9th Cir. 2002) ("Once the trial judge determines that there is prima facie evidence of genuineness, the evidence is admitted, and the trier of fact makes its own determination of the evidence's authenticity and weight.").

Rule 901 provides examples of evidence that satisfy the requirement, but does not limit courts to those examples, stating that the provided examples are just that and are not a complete list. The Rule 901, section (b) examples include one regarding distinctive characteristics, stating that "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can satisfy the requirement.

**A.** <u>**E-mails have distinctive characteristics.**</u>

The emails can be also authenticated under Rule 901(b)(4) because their "appearance, contents, substance, internal patterns, [and] other distinctive characteristics"

show that they are what they purport to be—e-mails sent to and from K. Norton, Mrs. Pierce, and others. Specifically, the "to" and "from" lines located in the header at the top of each email identify-by name-the sender and recipients (e.g., "FROM: S. Pierce) In addition, many of the emails include a signature and/or signature block at the end that repeats the name of the sender. Moreover, the contents of the emails relate to the working relationship between Mrs. Pierce and Mrs. Norton.

Courts have authorized the admission of emails based on the presence of similar "distinctive" identifiers. *See e.g., United States v. Safavian*, 435 F. Supp. 2d 36 (D. D.C. 2006). Safavian involved a prosecution arising from the Jack Abrahamoff lobbying scandal. Before trial, the government announced that it intended to admit approximately 260 e-mails that had been extracted from the server of Abrahamoff's law firm, under the theory that the e-mails constituted "e-mail exchanges between Mr. Safavian, Mr. Abrahamoff, and other individuals." 435 F. Supp. 2d at 40. The *Safavian* court concluded that the government had made a sufficient showing as to authenticity because, among other things, "these e-mails contain the name of the sender or recipient in the bodies of the e-mail, in the signature blocks at the end of the e-mail, in the 'To:' and 'From:' headings, and by signature of the sender. The contents of the e-mails also authenticate them as being from the purported sender and to the purported recipient, containing as they do discussions of various identifiable matters." *Id.* at 40.

Likewise, in *United States v. Siddiqui*, 235 F.3d 1318 (11th Cir. 2000), the Eleventh Circuit rejected an authenticity challenge to an e-mail that had been admitted as proof of communications made and received by the defendant. *Id.* at 1322-23. Relying on Rule 901(b)(4), the court found that the government had properly authenticated the email because

3

it reflected the defendant's email address, because A[t]he context of the e-mail" showed familiarity with the underlying scheme, and because the email contained references to the defendant's nickname. *Id.*

### B. The e mails are not being offered for the truth of the matter asserted therein.

Rule 801(c) defines hearsay to mean "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Many of the e-mails Defendant expects to offer at trial will be admissible because they will not be offered for the truth of the matter asserted therein. Instead, Defendant is offering the e mails for the purpose of demonstrating there was a working relationship between Ms. Pierce and Mrs. Norton. *See United States v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000) (E-mails admissible in fraud prosecution to show defendant and recipient's relationship and custom of communicating by e-mail.) They will also be offered to show that Kelly Norton was assigning projects to Mrs. Pierce, which she would in turn complete. There are no "statements" per se that are being offered for their truth on their face.

## II. Facebook postings.

Witnesses intend to testify that Kelly Norton posted various matters on her Facebook page, including quotes, sayings and videos about karma and revenge. These witnesses were Facebook "friends" with Mrs. Norton at the time that she posted these items, and thus had access to those items posted on her Facebook page. These witnesses will be able to lay the proper foundation for the screenshots of these Facebook pages at trial. They will be able to attest to how they had access to Ms. Norton's Facebook page during the period in question,

4

the approximate date and time of the specific post, and will testify that they obtained a screenshot thereof, on or around the time the post was made. *See Eschert v. City of Charlotte*, 2017 WL 3633275 (W.D. N.C. August 23, 2017)(Overruling Defendant's objection at trial as to foundation, the Court ruled that the witness had properly authenticated the screenshots under Fed. R. Evid. 901; Witness testified he personally took one group of the screenshots of Facebook posts on his phone, those screenshots notated the date and time he took them, and the Facebook posts he screenshotted were publicly available.)

The offered screenshots of Mrs. Norton's Facebook page are not hearsay because they are not being offered for the truth of the matter asserted, but instead to show Mrs. Norton's state of mind and motive pursuant to Federal Rule of Evidence 803(3).   This Rule provides:

> **Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such  as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

One of the sayings, for example, that Kelly Norton shared from Womenworking.com, provides as follows:

> **KARMA**
> No need for revenge
> Just sit back and wait
> Those who hurt you will eventually
> screw up themselves and if you're
> luck, God will let you watch.

Mrs. Norton posted this in or around the time that Defendants were indicted, and similar messages during the period that she was going through a divorce.  Defendants are not offering the screenshot for the truth of the above statement, but instead as circumstantial evidence of Ms. Norton's motive to seek revenge on her husband. *See*

ASHLEY D. ADAMS, PLC
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

5

1  *Passenger Corporation,* 2016 WL 8711718 (E.D. N.Y. April 29, 2016.)(Text messages were
2  not hearsay as they were being offered as circumstantial evidence of the witnesses' state of
3  mind.)  Such evidence is also probative of Ms. Norton's credibility as a witness.

4  **III.    Transcripts of FBI and other interviews.**

5  The government has advised that it will not stipulate to the transcripts of the various
6  FBI Interviews which were produced on DVD's, which Defendants had prepared in order to
7  assist the jury during trial.  The transcripts do not have to be certified by a court reporter.
8  Rather, the government, like the defense, has an obligation to review transcripts and point out
9  inaccuracies.  *See United States v. Booker*, 952 F.2d 247, 250 (9th Cir.1991) ("[T]he fact that
10 the transcripts were not available until the day they were to be used does not constitute grounds
11 for reversal.  Defense counsel was aware of the existence of the tapes approximately one month
12 before trial and had ample opportunity to review them and to make her own transcripts.");
13 *United States v. Pena-Espinoza*, 47 F.3d 356, 360 (9th Cir.1995)("We have previously upheld
14 a trial court's admission of wiretap transcripts over a defense objection that it had no
15 opportunity to investigate the transcripts' accuracy, where the defendant had unquestionably
16 known from the outset that the transcripts would be central to the prosecution's case and yet
17 had made no meaningful effort to check transcripts for accuracy or to obtain a continuance in
18 order to examine the transcripts").; *United States v. Armijo*, 5 F.3d 1229, 1234-35 (9th
19 Cir.1993) (no showing at trial that translation was inaccurate); *United States v. Taghipour*, 964
20 F.2d 908, 910 (9th Cir.), *cert. denied*, 506 U.S. 899 (1992) (parties stipulated to accuracy; no
21 showing of prejudice); *see also United States v. Font-Ramirez*, 944 F.2d 42, 48 (1st Cir.1991)
22 ("Because [appellant] did not offer an alternative transcript and did not point out any specific

**ASHLEY D. ADAMS, PLC**
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

inaccuracies in the government's transcript, the district court was within its discretion in allowing its use.")

The use of transcripts as an aid in listening to tape recordings is reviewed for an abuse of discretion. *Taghipour*, 964 F.2d at 910. The Ninth Circuit will examine whether the following steps were taken to ensure the accuracy of the transcripts: 1) whether the court reviewed the transcript for accuracy; 2) whether opposing counsel was allowed to highlight alleged inaccuracies and to introduce alternative versions; 3) whether the jury was instructed that the tape, rather than the transcript, was evidence; and 4) whether the jury was allowed to compare the transcript to the tape and hear counsel's arguments as to the meaning of the conversations. *See United States v. Chen*, 754 F.2d 817, 824 (9th Cir.), cert. denied, 471 U.S. 1139, (1985); *United States v. Armijo*, 5 F.3d 1229, 1234 (9th Cir. 1993); *see also Booker*, supra., at 250 (Before written transcripts of recorded evidence can be used as a jury aid, the following usually occurs: (1) the judge reviews the transcripts for accuracy; (2) the agent who participated in the taped conversation testifies as to the accuracy of the transcripts; and (3) the judge gives the jury a limiting instruction telling it to use the tapes solely as an aid (and not as evidence in place of the tapes) .

The above *Booker* factors are not absolute prerequisites to admissibility. In *Booker* itself, the appellate court held that the judge did not abuse his discretion when he permitted transcripts to be used as an aid, even though he never reviewed the transcripts for accuracy. *Id.* at 250. Similarly, in *United States v. Pena-Espinoza*, 47 F.3d 356 (9th Cir.1995), the court upheld the admission of wiretap transcripts which had been translated from Spanish into English, even though the transcripts had not been independently verified for accuracy by the court or other witnesses. Because the defendant made only "largely conclusory allegations of

1 possible inaccuracy," the court concluded that the accuracy of the transcripts *were never*
2 *seriously disputed* and that the district court did not therefore abuse its discretion in admitting
3 them. *Id.* at 360.

4 In sum, the government has an obligation to point out inaccuracies of the transcripts of
5 their own interviews or offer their own transcripts.

## IV. Government's 901(11) Notice.

On May 22, 2018, just a little over a week before trial, the United States filed a notice pursuant to Fed.R.Evid. 901(11) advising of its intent to use written certifications of business records in lieu of live testimony by record custodians at trial. Many of the certifications were prepared by custodians other than those whom the government have included on their witness list. It is unclear whether the "new" witnesses are able to provide the foundational requirements required by 901(11), as they did not assemble or gather the documents. Some of the productions are voluminous, and thus the government bears the burden to show that any live witness has also reviewed all of the subject documents, and confirmed that they are responsive to the corresponding grand jury subpoena. *Tongil Co. v. Vessel Hyundai Innovator,* 968 F.2d 999, 999–1000 (9th Cir.1992) (burden is on "the proponent of the business records" to "satisfy the foundational requirements of the business records exception").

## V. The government is attempting to admit expert testimony through lay witnesses which was not disclosed, and which is not relevant.

After this Court indicated that it may not allow Mr. Broderick to express his personal opinion about Mr. Pierce's conduct, the government is seeking to indirectly admit other similar expert/lay opinion testimony through other witnesses. On May 23, 2018, the government turned over FBI interview notes from the interview of Kris Mayes, a former ACC

8

Commissioner, Steve Olea, a former ACC staff member, and Robin Mitchell, an attorney for the ACC. All such witnesses, it appears, may offer various forms of expert testimony, which has not been disclosed, is not relevant, nor appropriate. For example, Kris Mayes, who was not on the Commission during either vote, offers her personal view on various aspects of the first Johnson rate case, and her interpretation of Arizona's Constitution. Mrs. Mitchell outlandishly claims that Mr. Johnson is "hiding" $9 million dollars. Mr. Olea now offers, with the benefit of hindsight, that the ACC staff thought it was "weird" that Johnson Utilities filed a 40-252 proceeding, even though it was contemplated that it would happen back in May of 2010. Mr. Olea will also apparently now testify that Mr. Pierce's amendment was "pretty rare." None of this testimony was disclosed until two days ago. Such testimony is the government's attempt to backdoor in the testimony that it could not admit through Mr. Broderick. These witnesses' personal opinions of Mr. Pierce's conduct, especially in the context of a political process are irrelevant, prejudicial, and inadmissible.

RESPECTFULLY SUBMITTED this 25th day of May, 2018.

**ASHLEY D. ADAMS, PLC**

By: *s/Ashley D. Adams*
    Ashley D. Adams
    Attorney for Defendant Sherry Ann Pierce

CERTIFICATE OF SERVICE

I hereby certify that on I electronically transmitted foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ ECF registrants:

1. THE HONORABLE JOHN J. TUCHI
   United States District Court
2. Sandra Day O'Connor U.S. Courthouse
   401 West Washington Street
3. Phoenix, AZ 85003-2156
   Phone: (602) 322-7510
4. tuchi_chambers@usd.uscourts.gov

5. Fred Battista
   Assistant U.S. Attorney
6. United States Attorney's Office
   Two Renaissance Square
7. 40 North Central Avenue, Ste 1200
   Phoenix, Arizona 85004
8. Fred.Battista@usdoj.gove

9. Frank Galiti
   Assistant U.S. Attorney
10. United States Attorney's Office
    Two Renaissance Square
11. 40 North Central Avenue, Ste 1200
    Phoenix, Arizona 85004
12. Frank.Galalit@usdoj.gov

13. Pat Gitre
    Patricia A. Gitre PLC
14. 801 N. 1ST Avenue
    Phoenix, Arizona  85003
15. 602-320-0314
    patgitre@patriciagitre.com
16.
    Ivan K. Mathews
17. Susan Mathews
    Mathew & Associates
18. 6245 N. 24th Parkway, Suite 207
    Phoenix, Arizona 85016
19. 602-254-8088
    ikmathew@mathewlaw.com
20.
    Woodrow Thompson
21. Hannah Porter
    Gallagher & Kennedy
22. 2575 E. Camelback Road, Suite 1100
    Phoenix, AZ 85016-9225
    Hannah.porter@gknet.com

ASHLEY D. ADAMS, PLC
4301 N. 75th Street, Suite 105
Scottsdale, AZ 85251
(480) 219-1366
(480) 219-1366

10

woody.thompson@gknet.com

*s/ Mali Evans*
Mali Evans
Legal Assistant to Ashley D. Adams